THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, RESPONDENT, *v.* NATHANIEL SANDS, APPELLANT.

*Indorsement over of a check received by the comptroller of New York, instead of depositing it — a person receiving it is chargeable with knowledge of the comptroller's want of power — it is no defense to show that it was transferred to one having a claim against the city — when the court may direct a verdict — when interest follows a recovery as matter of legal right.*

In August, 1871, August Belmont & Co. delivered to Richard B. Connolly, the comptroller of the city of New York, their check for $75,000, made payable to his order, for certain consolidated stock of the county of New York, which was to be, and was thereafter, issued and delivered to them. Connolly thereafter indorsed the check as comptroller and delivered it to the defendant Sands, who was then a commissioner of taxes, who received and collected the same and applied the moneys so obtained to his own use.

This action was brought by the board of supervisors of the county of New York, and after the consolidation of the county and city was continued by the latter, to recover the said sum of money upon the ground that the check was indorsed and delivered by Connolly and received by Sands with full knowledge of all the facts, wrongfully and corruptly, and with the intent to cheat and defraud the plaintiff.

*Held,* that the comptroller by indorsing and delivering the check, instead of depositing it as required by law, palpably violated his official duty, and that the defendant Sands, being chargeable with knowledge of the fact that the comptroller had no power to indorse the check over to him, was also guilty of an official wrong which rendered him liable to the plaintiff in this action.

The defense was that the defendant had rendered services for the county of New York in negotiating the sale of the bonds, under a contract entered into between him and the comptroller, which entitled him to receive the amount as a compensation for such services.

*Held,* that assuming that the comptroller had the power to make such a contract with the defendant, nevertheless his right to the compensation to be received thereby was neither more nor less than a claim against the county to be ascertained, adjusted and paid in the mode prescribed by law.

Where a defendant moves for a dismissal of the complaint, and the plaintiff moves for the direction of a verdict, it is proper for the court to direct a verdict for the plaintiff where the case would warrant a verdict for him upon any facts which the jury might have found.

That a direction of a verdict in this case for the full amount with interest was proper.

APPEAL from a judgment in favor of the plaintiff, entered at the New York Circuit upon a verdict directed by the court.

*L. R. Marsh* and *A. J. Vanderpoel,* for the appellant.

*C. P. Miller,* for the respondent.

DAVIS, P. J.:

This action was commenced October 21, 1873, by the board of supervisors of the county of New York against the defendant Nathaniel Sands. Issue was joined therein in March, 1874. After the consolidation of the city and county of New York the name of the plaintiff was changed by substituting the mayor, aldermen and commonalty of the city of New York by stipulation, and an order based thereon. The complaint alleges substantially that in August, 1871, the defendant Sands was one of the commissioners of taxes and assessments of the city and county of New York, and Richard B. Connolly was comptroller of the city of New York; that on or about that day August Belmont & Co. made their check, whereby they requested the National Bank of the city of New York to pay to the order of the comptroller the sum of $75,000, in payment for certain consolidated stock of the county of New York thereafter to be issued to them, which stock was afterwards issued and deliv-

ered; that the said check was delivered to the comptroller for the use and benefit of the plaintiff, and that the comptroller did not apply the check nor the money therein mentioned, or any part of the same, to the use and benefit of. the plaintiff, but on the contrary he, with the intent to cheat and defraud the plaintiff out of the said sum of money, and with the intent that the defendant Sands should apply the said check to his own use, did indorse said check as comptroller, and willfully and corruptly delivered the same to the defendant, and that the defendant, knowing the facts, wrongfully and corruptly, with intent to cheat and defraud the plaintiff out of said sum, accepted said check from said Connolly, and afterwards obtained the money from the said National Bank thereon, and applied the same to his own use and benefit; and the complaint finally alleges in the usual form that the defendant has neglected and refused to pay the money to the plaintiff.

It can hardly be doubted that these allegations are of a cause of action sounding in fraud, and one of the principal questions presented on the appeal is whether the evidence in the case tended to establish the right to recover under the allegations of fraud contained in the complaint. It was proved on the part of the plaintiffs that Belmont & Co. did draw and deliver the check described in the complaint, payable to Connolly, the comptroller of the city of New York; that Connolly thereafter indorsed the same as such comptroller and delivered the check to the defendant Sands, and that the defendant received the same, presented it and collected the sum of $75,000, thereon which he applied to his own use. If this transaction was a wholly unlawful one, then it does sustain the allegations of fraud contained in the complaint. A public officer whose duty it is to receive moneys belonging to the city, and place the same in its treasury for its use, cannot after receiving a check for such moneys, instead of depositing the same as the law requires in the treasury, deliver the check with his indorsement to a third party for the use and benefit of such party, without being guilty of a fraud which the law denounces and punishes as such. Nor can any person receive from the comptroller a check indorsed in his favor, drawn for the benefit of the city or county and not deposited as required by law, and collect the moneys thereon and apply them to his own use, without being held in law guilty of such fraudulent

conduct as charges him with obtaining the money wrongfully and fraudulently and subjects him to an action therefor. This position we think is fully supported by authority. (*Supervisors, etc.,* v. *Ellis,* 59 N. Y., 620; *Same* v. *Van Clief,* 1 Hun, 454; *People* v. *Fields,* 58 N. Y., 504; *People* v. *Ingersoll,* 58 id., 27.)

By chapter 590 of the Laws of 1857, section 6, and chapter 190 of the Laws of 1870, it was enacted that all moneys drawn from the treasury by authority of the supervisors shall be upon vouchers for the expenditure thereof, examined and allowed by the auditor and approved by the comptroller, and no money shall be drawn therefrom except on a warrant drawn by the comptroller, countersigned by the mayor and the clerk of the board, and no other warrant shall be necessary for such purpose. When the check for $75,000 drawn and delivered by Belmont & Co. to the comptroller payable to his order in payment for county stock, was delivered to the comptroller it became the property of the county. The comptroller's duty under the law was forthwith to deposit it in the treasury in such form that it would be subject to the provisions of the statutes just referred to, and so that it could not be reached and disposed of except under those provisions for some lawful purpose. His neglect to do that was a palpable violation of his official duty, and his disposition of the check by indorsing it over to Sands was another step in violation of law for which he was alike chargeable with breach of duty. The defendant Sands was bound to know that the comptroller had no power whatever to receive the check and indorse it over to him, and that in doing so he was guilty of an official wrong. His knowledge of that fact and his receipt of the check with such knowledge charges him with all the responsibilities of participation in the violation by the comptroller of his official duty, and those several acts contain every element of wrong essential to sustain the allegations of fraud contained in the complaint. The conduct of the defendant was equivalent to a fraudulent appropriation to his own use of the money obtained upon the check with the collusion and help of an officer of the city and county, who he was bound to know had no authority to pay any city or county indebtedness to him otherwise than in accordance with the requirements of the statute. Such an appropriation was a wrongful conversion of moneys, and he cannot object that the trans-

action is characterized as one intended to cheat and defraud the plaintiffs. The proof is, therefore, in our opinion abundant to sustain the alleged cause of action and, unless the defense interposed was a sufficient one, the plaintiffs are entitled to judgment. That defense was in substance that the defendant had rendered services for the county of New York under a contract between him and the comptroller in negotiating the bonds of the county which entitled him to the amount received as a compensation for such services. The contract between him and the comptroller was contained in a letter written to him by the latter, in which after recital of various reasons for making the contract, the comptroller agreed in substance that he should have a commission of one-half of one per cent upon the bonds he should negotiate. Assuming that the comptroller had the power to make such a contract with the defendant, and that upon performance of the service he was entitled to the specified compensation, nevertheless his right to such a compensation was neither more nor less than a claim against the county to be ascertained, adjusted and paid in the mode prescribed by law. It is hardly necessary to say that the mode pursued in this case did not conform in any sense with the requirements of the statutes. His claim was never presented nor audited and allowed, nor put in any condition which justified its payment by a warrant drawn upon the treasury under the safeguards against fraud which the law had provided. The whole transaction was simply a " private deal " between the comptroller, assuming to act officially and the defendant, obviously for the purpose of making compensation for the services rendered in a manner that should avoid compliance with the requirements of the statute when such services are to be compensated out of the funds of the county. Such a transaction is entitled to receive no sanction by the courts. To hold it lawful would open the door to innumerable frauds upon the city and county by preventing the moneys which belong to them, from reaching the treasury, whence they cannot be extracted without the process prescribed by statute. It is, therefore, no defense to show that the check of Belmont & Co., belonging to the county, was received by the defendant from the comptroller, under the circumstances detailed in the evidence, in payment of a claim for services, because no payment can be lawfully made in that form and mode. The receiving of the check,

therefore, and the collection of the moneys by the defendant was a fraudulent misappropriation of them to his own use. No person can acquire lawful title to the moneys of the city or county, through its officers, without compliance with the requirements of law. This rule must, for the protection of the public, be held an inflexible one.

These, doubtless, were the views of the court in denying the motion to dismiss the complaint and directing judgment. The defendants moved for a dismissal of the complaint and the plaintiff moved for the direction of a verdict. Neither party asked to go to the jury on any question of fact. Under such circumstances the disposition of the case by the court was entirely proper, if the case would have warranted a verdict for the plaintiffs upon any fact the jury might have found. (*McCall* v. *Sun Mutual Ins. Co.*, 66 N.Y., 506, 517; *Bridge* v. *Pierson*, 66 Barb., 514; *Ormes* v. *Dauchy*, 82 N. Y., 443; *Dillon* v. *Cockroft*, 90 id., 649.)

We think the evidence would have warranted a verdict for plaintiff because the allegations of fraud contained in the case were substantially proved, not perhaps as matters of actual intent, but as a legal result of acts in violation of law and duty. The verdict directed for the full amount with interest was proper. The plaintiff is entitled to interest upon the moneys appropriated, and there being no dispute as to the sum upon which interest should be computed, if the recovery were had at all, its recovery followed as matter of legal right. (*Phillips* v. *Speyers*, 49 N. Y., 653; *McCormick* v. *P. C. R. R. Co.*, 49 id., 303.)

The judgment must be affirmed.

BRADY and DANIELS, JJ., concurred.

Judgment affirmed.